## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MORRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-3300-MAB |
| | ) |
| TREVOR ROWLAND, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Matthew Dulaney, Eric Evans, Philip Royster, Bradley Sadler, Caleb Zang, Trevor Rowland, and Robert Hoffman's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 46; *see also* Doc. 47). The Court initially reviewed and denied Defendants' motion because the evidence demonstrated that a genuine issue of material fact existed, thereby precluding summary judgment in Defendants' favor (*see* Doc. 58). However, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court provided Defendants with the option to request an evidentiary hearing if they wished to further contest the dispositive factual issue of whether Plaintiff filed or attempted to file a grievance related to the incident on January 12, 2022 (*Id.* at pp. 9-10). Defendants made such a request (Doc. 62) and a *Pavey* hearing was held on September 23, 2025 (Doc. 68; *see also* Doc. 63). For the reasons set forth below, Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is **DENIED** (Doc. 46).

Page **1** of **13**

## BACKGROUND[1]

Plaintiff Robert Morris filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was incarcerated at Menard Correctional Center (*see* Docs. 1, 2, 15).[2] In this case, Plaintiff is proceeding upon a single Eighth Amendment claim against Defendants for directing or participating in the use of excessive force against him on January 12, 2022 (Doc. 15 at p. 1). More specifically, Plaintiff alleges that during a peaceful protest at Menard on January 12, 2022, an inmate at Menard attempted to commit suicide by lighting his cell on fire (*Id.* at p. 2). In response, Defendants Rowland, Zang, Royster, and Sadler instructed Defendants Hoffman, Evans, and Delaney to use mace and fire extinguishers to spray Plaintiff and other inmates who were involved in the peaceful protest, even though they played no role in the fire (Doc. 2 at p. 16; Doc. 15 at p. 2). Defendants Hoffman, Evans, and Delaney then entered the gallery and sprayed chemical agents into Plaintiff's eyes, nose, and mouth for 3-5 minutes (Doc. 2 at p. 16; Doc. 15 at p. 2).

As designated in the Court's Merit Review Order, Plaintiff was permitted to proceed on the following claim:

> **Claim 4:**   Eighth Amendment claim against Rowland, Zang, Sadler, Royster, Hoffman, Evans, and Delaney for directing or actively spraying Plaintiff in the eyes, nose, and mouth with

---

[1] This Order focuses upon the specific issue of whether Plaintiff filed or attempted to file a grievance related to the incident on January 12, 2022 (*see* Doc. 58 at pp. 9-10). Accordingly, the following background section primarily recounts facts and details related to that issue. For a more detailed recollection of Plaintiff's other attempts to exhaust his administrative remedies, as well as the general background of this case, see the Court's Order dated August 12, 2025 (*Id.*).

[2] Plaintiff initiated these proceedings by filing a Complaint in *Morris v. Jeffreys*, Case No. 23-cv-1162-GCS (S.D. Ill. 2023). Thereafter, for the reasons discussed in the Court's Order dated October 6, 2023 (Doc. 1), the Eighth Amendment excessive force claim Plaintiff is now proceeding upon in this case was identified and severed from Case No. 23-cv-1162.

> chemical agents for 3-5 minutes on January 12, 2022, during his participation in a peaceful protest at Menard.

(*Id.* at pp. 2-3).

###### I.    *Defendants' Motion and the Court's Initial Order*

On November 20, 2024, Defendants filed a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 46), along with a supporting memorandum and exhibits (Doc. 47; *see also* Docs. 47-1, 47-2, 47-3). After permitting Plaintiff to file a belated response brief (*see* Doc. 52), the Court initially denied Defendants' motion because a factual disputed existed as to whether Plaintiff attempted to submit a grievance about the incident on January 12, 2022, but was prevented from successfully doing so by prison officials (*see generally* Doc. 58). Pertinently, the Court observed that Plaintiff's claim of having attempted to grieve the January 2022 incident was supported by: (1) an affidavit he prepared that attested to having submitted multiple grievances which disappeared or went unanswered; (2) an affidavit from Inmate Tory McCray, which stated that Inmate McCray witnessed Plaintiff place his grievance in the grievance box; and (3) numerous other affidavits from inmates claiming that they were also unable to grieve the January 12, 2022, incident because the grievance process was unavailable to them (*Id.* at p. 8; *see also* Doc. 51 at pp. 17-18, Doc. 2 at pp. 38, 39, 55, 60).

However, the Court's Order provided Defendants with the opportunity to request a *Pavey* hearing if they wished to contest the issue of whether Plaintiff filed a grievance about the January 2022 incident, which was then lost or destroyed (*Id.* at pp. 9-10).

Defendants timely made such a request (Doc. 62), which the Court granted on August 28, 2025 (Doc. 63).

II.       *The Pavey Hearing*

A *Pavey* hearing was held on September 23, 2025 (Doc. 68). At that time, Plaintiff was called as Defendants' first witness (*Id.*). As the Court recalls Plaintiff's testimony, he began by testifying about his understanding of the grievance process and its various steps.[3] He then testified that he wrote a grievance which he placed in an envelope addressed to his counselor. When asked why he believed the ARB, the grievance officer, and his counselor had all "concurred," Plaintiff said he believed they had "concurred" because none of those parties responded to his grievance. However, Plaintiff later clarified that he did not believe the ARB had received anything from him because his grievance was destroyed or ignored earlier in the grievance process.

Plaintiff next testified to having written 2 to 3 grievances related to the January 12, 2022, incident just days after the incident occurred. He stated that he physically put his grievances in the grievance box brought to his cell by security staff. However, he also expressed his concern over the fact that security staff (i.e., the individuals he was suing) were the ones who had control over and access to the grievance box. After Plaintiff did not receive a response to his January 2022 grievances, Plaintiff sent another grievance and a message to his counselor in an attempt to learn why no one had responded to his January grievances. He later clarified that, in total, he wrote at least three letters inquiring

---

[3] The Court's recounting of the testimony from the *Pavey* hearing comes from the Court's notes about the hearing testimony.

into the status of his grievances. When asked why he believed there was a conspiracy to ignore his grievances, Plaintiff indicated that he believed there was a conspiracy because he thought staff were trying to cover up their use of excessive force on January 12, 2022.

Thereafter, Defense Counsel inquired about a grievance Plaintiff wrote in April 2024, which alleged a different incident of excessive force and was responded to by prison officials. Plaintiff agreed that he thought that grievance had been responded to, but he explained that he could not remember any additional details about that grievance. The Court then asked Plaintiff how he had received grievance forms and why his affidavit stated none were provided to him. Plaintiff said that he obtained grievance forms from his friends because the prison's officers would not provide them to him. And thus, he either wrote his grievances on blank paper or on the forms provided by his friends, which explained why he wrote that no real grievances were provided to him.

Additionally, the Court heard testimony from three other witnesses presented by Defendants, including Grievance Officer Sara Quick, Grievance Officer Jeffrey Olson, and ARB Chairperson Margaret Madole (Doc. 68). Ms. Quick worked as a prison counselor for six to seven years before recently being temporarily assigned to the grievance office. However, Ms. Quick's testimony was ultimately inconsequential because she testified that she only responded to grievances from the gallery she was assigned to, and she was not assigned to Plaintiff's gallery during the time in question.

Next, the Court heard testimony from Mr. Olson (Doc. 68). He indicated he did not become a counselor until 2023 and thus during the time in question, he worked in

dietary and not in the cell houses. Accordingly, his testimony did not help shed any light on the grievance process at the time in question.

Ms. Madole, an ARB chairperson, was the last witness to testify (Doc 68). Ms. Madole stated that she was the chairperson assigned to Plaintiff in 2022. She then testified about the general process regarding how the ARB receives and assigns grievances. She further explained that, even when a grievance is returned for being improperly sent to the ARB, a record reflecting that return would be created. She also said that she had never conspired with prison staff to ignore an inmate's grievance.

Finally, over Plaintiff's objection, Defendants were permitted to supplement the record by providing Plaintiff's cumulative counseling summary and records of Plaintiff's April 2022 grievance (Doc. 68). Defendants timely filed those records on September 25, 2025 (Doc. 69).

## LEGAL STANDARDS

### I.   Summary Judgment Standards

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has held that disputed factual questions can and should be resolved by the judge (rather than a jury) as a preliminary matter in an evidentiary hearing known as a "*Pavey* hearing." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). Thus, "[a]t Pavey hearings, judges may hear evidence, find facts, **and determine credibility.**" *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (emphasis added). *See also Smith v. Schwartz*, CIV. 10-721-GPM, 2012 WL 1600559, at *3 (S.D. Ill. May 7, 2012) ("At a *Pavey* hearing, a judge is empowered to resolve factual disputes pertaining to exhaustion and to make credibility determinations about the witnesses."). After making factual findings, "the district court may allow the claim to proceed or dismiss it for failure to exhaust." *Wilborn*, 881 F.3d at 1004.

II.    *Exhaustion Requirements*

As outlined in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the

prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 533-34.

III.     IDOC Grievance Procedures

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days

from the date of the warden's decision to appeal to the Administrative Review Board (the "ARB"). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

## DISCUSSION

The sole issue before the Court is whether Plaintiff filed a grievance (or grievances) identifying the January 12, 2022, incident that is the subject of this action, which was then lost, destroyed, or ignored through no fault of Plaintiff. Defendants argue they are entitled to exhaustion-based summary judgment because prison records demonstrate that Plaintiff never filed a grievance related to the incident on January 12, 2022 (*see generally* Docs. 47, 53, 68, 69). In support of this assertion, Defendants have provided evidence demonstrating that: (1) Plaintiff was able to file other grievances in 2022 (*see, e.g.*, Doc. 69 at pp. 3-12), and (2) prison records do not document the receipt of any

relevant, timely grievance (*Id.* at pp. 28-29, Doc. 47-2 at p. 1). In response, Plaintiff contends that he timely filed two to three relevant grievances, but they were lost or destroyed by prison staff (*see generally* Docs. 51, 68).

Here, after carefully considering all of the evidence, the Court finds that Defendant has failed to carry its burden of proof on the affirmative defense of exhaustion and therefore DENIES Defendants' motion (Doc. 46). First and foremost, although certain aspects of Plaintiff's testimony were not entirely clear,[4] the Court finds that the key parts of Plaintiff's testimony that are essential to supporting his version of events remained consistent and credible throughout his filings and testimony. *See Vazquez v. Chausse*, 23-CV-3050-MAB, 2025 WL 1579685, at *5 (S.D. Ill. June 4, 2025) (Finding the plaintiff's representations to be credible because, among other reasons, they "remained consistent throughout the pendency of this action and even in the months prior to his filing this action."). For instance, Plaintiff testified to having submitted two to three grievances related to the January 2022 incident without receiving any answer. His testimony as to filing those unanswered grievances remained consistent throughout the hearing and he provided equally consistent testimony as to how he obtained those grievance forms and attempted to submit them. *See, e.g.*, *West v. Ebers*, 23-CV-00224-SMY-MAB, 2026 WL

---

[4] For example, Plaintiff testified that he believed his counselor, the grievance officer, and the ARB concurred in ignoring his grievance. While that particular statement does not appear credible on its own, later testimony from Plaintiff clarified that he was not actually alleging that the ARB was aware of the fact that prison officials were ignoring his grievance filings. Instead, Plaintiff's testimony showed that he likely either used the word "concurred" in error or was ascribing a meaning to that word different than how it is typically used in legal proceedings (*Id.*). *See, e.g.*, *Jellis v. Harrington*, 3:15-CV-630-NJR-DGW, 2016 WL 8731083, at *4 (S.D. Ill. July 22, 2016) ("That Plaintiff may have been mistaken about when he spoke to his counselor does not render his entire testimony and affidavit non credible. Plaintiff appeared sincere in his statements of what occurred.").

614897, at *5 (S.D. Ill. Feb. 10, 2026) (Finding that "Plaintiff presented credible testimony that the institutional grievance process was unavailable."). In fact, Plaintiff's testimony even resolved a potential inconsistency between his claims of submitting two to three grievances and a prior statement he made in an affidavit that a real grievance wasn't provided to him, by explaining that he was not provided grievance forms by prison officials and instead had to obtain those forms through other inmates or write his grievances on pieces of paper (*Id.*). It was for that reason that Plaintiff said he was not provided a real grievance.

Moreover, Defense Counsel's questioning of Plaintiff at the *Pavey* hearing did not discredit, contradict, or poke any holes in Plaintiff's version of events. On the contrary, Plaintiff stuck to the same story throughout Defense Counsel's questioning and none of Defendants' other witnesses cast any doubt upon Plaintiff's testimony. Neither Mr. Olson nor Ms. Quick were Plaintiff's counselor or grievance officer at the time in question. Therefore, neither of them could personally dispute Plaintiff's claims of having sent a message to his counselor inquiring into the status of his grievances.[5] Similarly, Ms. Madole's testimony that the ARB did not receive a grievance from Plaintiff fails to contradict or cast doubt upon Plaintiff's allegations because Plaintiff reasonably explained that his grievances went unanswered at the facility level, which necessarily

---

[5] Mr. Olson was a food supervisor in January 2022 and had no experience as a counselor or grievance officer until 2023. Thus, his testimony as to grievance procedures provides little insight to the Court because it was not based upon his personal experiences dealing with grievances in January 2022. And Ms. Quick was not Plaintiff's assigned counselor in January 2022 and therefore, could not testify as to whether Plaintiff's counselor spoke with Plaintiff about his grievances during weekly tours in January 2022 (*Id.*). Moreover, Defendants' supplemental records demonstrate that tours of Plaintiff's cellhouse were not conducted on 1/13/22, 1/20/22, and 1/27/22 because "cellhouse on isolation." (Doc. 69 at p. 28).

implies that no ARB records would exist to document those grievances.

Additionally, as was noted in the Court's prior Order, Plaintiff's affidavit and *Pavey* hearing testimony were further supported by the affidavit of Inmate Tory McCray, who stated that he witnessed Plaintiff and other inmates place their grievances in the grievance box shortly after the January 2022 incident occurred (Doc. 58 at p. 8; *see also* Doc. 51 at p. 17). And notably, Defendants provided no reason as to why the Court should discredit Inmate McCray's sworn statement. Therefore, Plaintiff's testimony at the hearing was consistent, uncontroverted and corroborated by the sworn statement of another individual whom the Court has been given no reason to discredit (*Id.*).

For all of these reasons, the Court concludes that Defendants have failed to carry their burden of proof on the affirmative defense of exhaustion. Plaintiff is deemed to have exhausted his administrative remedies as to his Eighth Amendment claim.

## CONCLUSION

Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is **DENIED** (Doc. 46). Since the matter of exhaustion has now been fully and finally resolved in Plaintiff's favor, Plaintiff may proceed with his Eighth Amendment claim against Defendants. As a result, the stay on merits-based discovery is **LIFTED** (*see* Doc. 42 at pp. 5-6). A new schedule setting forth discovery and dispositive motion deadlines will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: April 9, 2026**

_____

**MARK A. BEATTY**
**United States Magistrate Judge**